## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

BRIAN K. REINBOLD,                              :
                                                :
          Plaintiff,                     :
                                                :
      v.                                     :    Civil Action No. 04-342-GMS
                                                :
NATIONAL ASSOCIATION OF LETTER                  :
CARRIERS BRANCH 1977,                           :
                                                :
          Defendant.                     :

---

BRIAN K. REINBOLD,                              :
                                                :
          Plaintiff,                     :
                                                :
      v.                                     :    Civil Action No. 05-47-GMS
                                                :
UNITED STATES POSTAL SERVICE,                   :
 and NALC LOCAL 191,                            :
                                                :
          Defendant.                     :

## OPENING BRIEF OF THE UNITED STATES POSTAL SERVICE
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

COLM F. CONNOLLY
United States Attorney

Patricia C. Hannigan
Assistant United States Attorney
Delaware Bar I.D. No. 2145
The Nemours Building
1007 Orange Street, Suite 700
P. O. Box 2046
Wilmington, DE 19899-2046
(302) 573-6277

Dated:  November 29, 2005

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES .................................................... ii

NATURE AND STAGE OF PROCEEDINGS ....................................... 1

SUMMARY OF ARGUMENT ................................................... 1

STATEMENT OF FACTS ..................................................... 2

ARGUMENT .............................................................. 5

    I.     THE NALC DID NOT BREACH ITS STATUTORY DUTY OF FAIR
           REPRESENTATION, THUS PLAINTIFF'S CLAIMS AGAINST THE
           USPS MUST FAIL ................................................ 5

    II.    EVEN IF THE NALC DID BREACH ITS DUTY OF FAIR
           REPRESENTATION, THE USPS IS ENTITLED TO SUMMARY
           JUDGMENT ..................................................... 7

CONCLUSION ............................................................ 9

## TABLE OF AUTHORITIES

**CASES**                                          **PAGE**

*Celotex Corp. v. Catrett*
    477 .S.Ct. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Hines v. Anchor Motor Freight, Inc.*
    424 U.S. 554 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Horowitz v. Fed. Kemper Life Assurance Co.*
    57 F.3d 300 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Pa..Coal Ass'n v. Babbitt*
    63 F.3d 231 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Vaca v. Sipes*
    386 U.S. 171 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Weber v. Potter*
    338 F.Supp. 2d 600 (E.D.Pa. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Whitten v. Anchor Motor Freight, Inc.*
    521 F.2d 1335 (6th Cir. 1975)
    *cert. denied*
    425 U.S. 981 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Woloszyn v. Lawrence County*
    396 F.3d 314 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## STATUTES & OTHER AUTHORITIES

    28 U.S.C. § 1441(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    39 U.S.C. § 1208(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    39 U.S.C. § 1209(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Federal Rules of Civil Procedure
    56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    902(11) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## NATURE AND STAGE OF PROCEEDINGS

On or about January 28, 2005, the *pro se* Plaintiff filed a five-paragraph Complaint alleging a "hybrid" cause of action against the United States Postal Service (USPS) and the National Association of Letter Carriers Local 191 ("NALC"), under 28 U.S.C. § 1441(b) and 39 U.S.C. §§ 1208(a) and 1209(b). D.I.-1.[1]  Plaintiff alleged that the defendants engaged in "unfair labor practices" and that the NALC breached its duty of fair representation. *Id.*

This matter was subsequently consolidated, for discovery purposes only, with *Reinbold v. NALC Branch 1977*, C.A. No. 04-342 (GMS). D.I.-18.

All three defendants have filed motions to dismiss. D.I.-22 in C.A. No. 05-047 (both NALC Locals); D.I.-24. In addition, divining that the "unfair labor practice" alleged against it is a wrongful discharge in violation of the Collective Bargaining Agreement ("CBA") between it and the NALC, the USPS has filed a Motion for Summary Judgment. This is the Opening Brief in Support of the USPS' Motion for Summary Judgment.

## SUMMARY OF ARGUMENT

1.    The NALC did not breach its statutory duty of fair representation, thus Plaintiff's claims against the USPS must fail.

2.    Even if the NALC breached its duty of fair representation, taking all the facts in the light most favorable to Plaintiff, the USPS is entitled to summary judgment.

---

[1]  References to Docket Item numbers refer to items docketed in C.A. No. 05-047 (GMS).

## STATEMENT OF FACTS

In October of 2004, Plaintiff was a "part-time flexible" letter carrier assigned to the Lancaster Avenue Station of the Wilmington Post Office. See Exhibit 1, attached, RIN00141.[2] He had previously been disciplined on several occasions, including a Letter of Warning dated January 4, 2003 and a seven-day suspension on April 4, 2003, both for failure to follow instructions. RIN00003.

On July 7, 2003, he received a fourteen-day suspension for failure to follow instructions. RIN00003. On that occasion, he had been instructed to provide evidence of an alleged court appearance on June 27, 2003, and the time he was released from court, but failed to do so. RIN00005, 8, 9. He had also been instructed to report back to work as soon as he was released from court, but failed to do so, nor did he call to notify his supervisor of his intention not to report to work. *Id.* He was advised in writing at that time by his supervisor, "I must warn you that future deficiencies will result in more severe disciplinary action being taken against you. Such action may include reduction in grade and/or pay, or removal from the Postal Service." RIN00004.

Following representation by NALC at Step A in the grievance process on November 20, 2003, the discipline arising from the June 27, 2003 infraction was reduced from a fourteen-day suspension to a Letter of Warning. RIN00001.

---

[2] All "RIN _ _ _ _" references are to documents produced to Plaintiff in the USPS' Rule 26 Initial Disclosures, Bates numbered RIN00001 - RIN00200. D. I.-20. The referenced documents are attached collectively as Exhibit 1, in numerical order therein, followed by a Certification pursuant to Rule 902(11) of the Federal Rules of Civil Procedure, by the USPS Custodian of records, to the effect that the pages included in Exhibit 1 are true and correct copies of records made and kept in the regular course of business.

On August 11, 2003, Plaintiff was disciplined for "discarding deliverable mail" and "failure to follow instructions". RIN00011. Specifically, he had been instructed to read a "Standard Operating Procedure" ("SOP") regarding the procedure he had violated by discarding deliverable mail. He was further instructed to sign the SOP and to place a copy in his route book. He did neither. *Id.*

Once again, the initial discipline -- a fourteen-day suspension -- was subsequently reduced, this time to a seven-day suspension at Step A in the grievance process, on November 20, 2003. *Id.* RIN00010. And again, Plaintiff was advised by his supervisor "I must warn you that future deficiencies will result in more severe disciplinary action being taken against you. Such action may include reduction in grade and/or pay, or removal from the Postal Service." RIN00012.

On November 6, 2003, Plaintiff was disciplined a fifth time for failure to follow instructions. RIN00119. This time, when Plaintiff called in sick, he was instructed to bring medical documentation on his return to work. When he returned, he refused to do so, saying that he "didn't need it." *Id.* He was given a fourteen-day suspension for failure to follow instructions, and was issued the same warning once again. *Id.*

On July 21, 2004 Plaintiff was disciplined again for failure to follow instructions. RIN00129. On that occasion, a supervisor instructed him to deliver mail on a particular route. Plaintiff looked directly at his supervisor, saying nothing, then walked into the building and clocked out. *Id.* Clocking out without his supervisor's approval was, itself, another violation of standard operating procedure. *Id.* As a result of this incident, Plaintiff was notified that he would be removed from the Postal Service. *Id.*

However, yet again, that discipline was reduced, this time to a thirty-day suspension at Step B in the grievance process on September 13, 2004, following vigorous representation by NALC. RIN00124, 128.

In fact, it was the seventh time he was cited for failure to follow instructions that precipitated his final removal. The final incident occurred only five days after Plaintiff had returned to work on October 15, 2004, following the thirty-day suspension. RIN00146. This time the infraction was use of overtime, after Plaintiff was specifically told that overtime was not authorized. *Id.* As a result of that incident, he was notified on October 27, 2004, that he would be removed from the Postal Service for failure to follow instructions. RIN00146. Once again, Plaintiff filed a grievance and was afforded vigorous representation by NALC, including requests for the production of documents by the USPS management, and the submission of multiple statements and documents in support of Plaintiff throughout the grievance process. RIN00143, 153, 158, 162, 164-167, 169-171, 187.

At the conclusion of that grievance procedure, Plaintiff appealed his removal to a Dispute Resolution Team, comprised of one NALC representative and one USPS representative. According to the report of the Dispute Resolution Team, the "Union's main contention [was] that [Plaintiff was] being singled out because he was issued a Notice of Removal dated July 21, 2004 for Failure to Follow Instructions." RIN00144, 163. The Dispute Resolution Team concluded "[t]here is no documentation in the file that would support this contention. There is no dispute that the Carrier did not follow the instructions that he was given by Management the morning that he committed these infractions. This employee has been given numerous chances and opportunities to improve his work ethic and performance as indicated by his previous discipline

- 4 -

record. The Dispute Resolution Team finds it hard to understand how an employee who just

returned from serving a 30-Day-Loss of Pay Suspension for 'Failure to Follow Instructions'

would just ignore the instructions given to him by his Supervisor." RIN00144.

Plaintiff was finally removed from the Postal rolls for just cause, effective December 16,

2004. RIN00142.

## ARGUMENT

### I.    THE NALC DID NOT BREACH ITS STATUTORY DUTY OF FAIR REPRESENTATION, THUS PLAINTIFF'S CLAIMS AGAINST THE USPS MUST FAIL

**Summary Judgment Standard**

Pursuant to the Federal Rules of Civil Procedure, a court will grant summary judgment

where "the pleadings, depositions, answers to interrogatories and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Facts that could

alter the outcome are material. *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302

n. 1 (3d Cir. 1995) (internal citations omitted.) In applying this standard, the court will "view the

underlying facts and all reasonable inferences therefrom in the light most favorable to the party

opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). If the

nonmoving party fails to make a sufficient showing on an essential element of its case with

respect to which it has the burden of proof, the moving party is entitled to judgment as a matter

of law. *See Celotex Corp. v. Catrett*, 477 .S.Ct. 317, 322 (1986). To avoid summary judgment,

Plaintiff must present some evidence, more than a scintilla, enough that a jury could reasonably

find for Plaintiff. *Id., Woloszyn v. Lawrence County,* 396 F. 3d 314, 319 (3d Cir. 2005).

As more fully set forth below, a material element which Plaintiff must preliminarily prove, before the court can reach his wrongful discharge claim against the USPS, is that the NALC breached its duty of fair representation to him. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570 - 571 (1976); *Weber v. Potter*, 338 F.Supp. 2d 600, 606 (E.D.Pa. 2004). Plaintiff has alleged no facts in support of his claim against the NALC, and the record reveals none. Because he cannot carry his burden of proof on that essential element of his case, the USPS is entitled to summary judgment in its favor.

**NALC's Representation**

Plaintiff cannot prevail on his claim that NALC breached its duty of fair representation unless he produces evidence that NALC's conduct toward him was "arbitrary, discriminatory or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). Conclusory allegations of bad faith, absent an affirmative showing to the contrary by the Plaintiff, will not sustain his cause of action against the union for breach of its duty. *Whitten v. Anchor Motor Freight, Inc.*, 521 F.2d 1335, 1341 (6th Cir. 1975), *cert. denied*, 425 U.S. 981 (1976).

Here, as reviewed in the Statement of Facts, *supra*, the evidence shows that the NALC had a history of vigorous representation of this problem employee. NALC had previously been successful in reducing Plaintiff's discipline on three different occasions. In addition, NALC actively represented Plaintiff regarding the incident that finally lead to his removal. Plaintiff's three-line allegation at paragraph 4 of his "bare-bones" complaint (D.I.-1) does not even allege any facts on which the court could rest a contrary finding. That failure is magnified by Plaintiff's failure to cooperate in discovery, as outlined in the defense motions to dismiss. D.I.-16, 18.

- 6 -

Accordingly, taking the facts in the light most favorable to him, Plaintiff cannot show any breach of NALC's duty to him.

As a result of his inability to show that the NALC violated its duty to him, Plaintiff's claim against the USPS is doomed. It is clear that, in order to recover from the USPS for a violation of a collective bargaining agreement, he must first show that his union breached its statutory duty of fair representation in handling his grievance. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. at 570-571. NALC's breach is a threshold legal issue, a "material fact", which must be shown before the Court can address the merits of Plaintiff's claim of wrongful discharge by the USPS. *Vaca v. Sipes*, 386 U.S. at 186. Since Plaintiff is unable to show the union's breach, any claims against the USPS are barred. *Weber v. Potter*, 338 F. Supp. 2d at 606. The USPS is entitled to summary judgment as a result of Plaintiff's inability to carry his burden of proof on this threshold issue.

## II.    EVEN IF THE NALC DID BREACH ITS DUTY OF FAIR REPRESENTATION, THE USPS IS ENTITLED TO SUMMARY JUDGMENT

### Summary Judgment Standard

The summary judgment standard as set forth above applies to this argument. Unless the Plaintiff can show that there is a genuine issue of material fact regarding each element of his claim of wrongful discharge, the USPS is entitled to summary judgment.

### Wrongful Discharge

The terms and conditions of Plaintiff's employment with the USPS were set forth in the Agreement between United States Postal Service and National Association of Letter Carriers, AFL-CIO, 2001-2006" ("Collective Bargaining Agreement" or "CBA"), Article 16 of the CBA

- 7 -

provides the procedures to be followed by the USPS in disciplining employees. See Exhibit 2, attached. The disciplinary procedures are designed to be, in the first instance, "corrective in nature, rather than punitive." Exhibit 2, page 78. The disciplinary process is typically, as was the case with Plaintiff, "progressive" in nature, *i.e.* comparatively modest discipline for an initial infraction, then increasingly punitive for each subsequent infraction, up to the final penalty of removal from the Postal Service. Exhibit 2, page 79. RIN00192 (excerpt from the CBA "Administration Manual"). In order to remove an employee, the Postal Service must have "just cause." *Id*.

As set forth in the Statement of Facts, *supra*, it is undisputed that Plaintiff had a history of disciplinary problems and had moved steadily up the progressive discipline chain to the ultimate sanction of removal. Plaintiff has not shown even a "scintilla" of evidence to the contrary. There is no genuine issue of material fact here. Instead, upon these facts, it is clear Plaintiff cannot bear his burden of proving that his discharge was unlawful. Summary judgment should be granted to the USPS as a matter of law.

## CONCLUSION

For the reasons stated and upon the authorities cited herein, the USPS respectfully moves the court to grant summary judgment in its favor.

Respectfully submitted,

COLM F. CONNOLLY
United States Attorney

By:   /s/Patricia C. Hannigan
Patricia C. Hannigan
Assistant United States Attorney
Delaware Bar I.D. No. 2145
The Nemours Building
1007 Orange Street, Suite 700
P. O. Box 2046
Wilmington, DE 19899-2046
(302) 573-6277
Patricia.Hannigan@usdoj.gov

Dated:November 30, 2005

# Exhibit 1

## USPS-NALC JOINT STEP A
## RESOLUTION FORM

N.A.L.C.

U.S. POSTAL SERVICE

UNION REP _D. Metxell_

MGT. REP _C Vandelde_

GRIEVANT _Brian Reinbold_

OFFICE _Lanc Pi_

LOCAL UNION # _5-4-3_

DATE _11/20/03_

As a result of our discussion this date, it is mutually agreed that the above cited grievance is resolved in accordance with the following:

14 Day Suspension Dated 7/7/03 Will Be Reduced To A Low.

Both parties agree that this settlement is non-precedent setting and will not be cited by either in any subsequent grievance or arbitration hearing.

_____  11/20/03
Union Rep            Date

_____  11/20/03
Management Rep            Date



UNITED STATES
POSTAL SERVICE

Date:        July 7, 2003

Subject:     Fourteen-Day Suspension

To:          Brian K. Reinbold
             Letter Carrier                    PL 462
             Lancaster Station 19805-9998

This 14-Day Paper Suspension is being issued to you for the following reasons:

**CHARGE    FAILURE TO FOLLOW OFFICIAL INSTRUCTIONS**

Specifically, on June 20, 2003, you submitted a PS Form 3971, for court leave on 6/27/03. You were instructed to provide evidence of your court appointment and the time you were released from court. You were to bring this evidence on your return to duty. However, you failed to provide any evidence of your court appointment or of the time you were released.

You were also instructed to report back to work as soon as you were released from court. However, you did not report to work, nor did you call to notify me or anyone else of your intentions of not reporting

Employees must follow the instructions of their supervisor. If they disagree with these instructions, they are to follow them nevertheless, and may grievance the instructions through the grievance/arbitration procedures.

Future conduct of this nature can and will not be tolerated.

In addition, the following elements of your past record were considered in arriving at this decision:

1.    You were issued a 7-Day Suspension dated 04/4/03, for Failure to Follow Official Instructions
2     You were issued a Letter of Warning dated 01/04/03, for Failure to Follow Instructions and Failure to Follow Standard Operating Procedures.

RIN00003

- 2 -

It is hoped that this official suspension will serve to impress upon you the seriousness of your action and that future discipline will not be necessary. If you are having difficulties, which I may not be aware of or if you need additional assistance or instructions for improving your performance, please, call on me or you may consult with other supervisors and we will assist you where possible. However, I must warn you that future deficiencies will result in more severe disciplinary action being taken against you. Such action may include reduction in grade and/or pay, or removal from the Postal Service.

While this suspension does not result in a loss of time or pay, it is equivalent to and is of the same degree of seriousness as a time-off suspension. It satisfies the same requirement for progressive discipline as a time-off suspension, and may be cited as an element of past discipline pursuant to Article 16.10.

You have the right to file a grievance under the grievance/arbitration procedure set forth in Article 15 of the National Agreement within 14 days of your receipt of this notice.

Signature Supervisor, Date

Frank R. Rendon
Supervisor, Customer Services

Concurring Official, Date   7/11/10

I have received the original of this letter on   07/11/10

Signature _____   Soc. Sec. # _____

Cc:    OPF
       Labor Relations
       File

RIN00004

# UNITED STATES POSTAL SERVICE®

## Request for or Notification of Absence

| Employee's Name (Last, First, M.I.) | | Social Security No. | | Date Submitted | | No. of Hours Requested | | | PP | | Year |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Kentucky, Beaux, K | | 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 | | 04/20/03 | | 8.5 | | | | | |

| Installation (For PM leave, show city, state, and ZIP code) | | | N/S Day | Pay Loc.# | D/A Code | From Date | Hour | | Sched-uled | Un-scheduled | Day | Init. | Hours |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Wilmington Ave Station | | | | | 452 | 04/27/03 | 0400 | | | | Sat 01 | | |

| Time of Call or Request | Scheduled Reporting Time | Employee Can Be Reached At (if needed) | | Thru Date | Hour | | | | Sun 02 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | ☐ No Call | | 04/26/03 | 0400 | | | | | | |

| Type of Absence | Documentation (For official use only) | Revised Schedule for (Date) | Approved in Advance | | Mon 03 | | |
|---|---|---|---|---|---|---|---|
| ☐ Annual | ☐ For FMLA Leave (Certification reviewed) | | ☐ Yes  ☐ No | | Tue 04 | | |
| ☐ Carrier 701 Rule | ☐ For COP Leave (CA1 on file) | | | | Wed 05 | | |
| ☐ LWOP (See reverse) | ☐ For Advanced Sick Leave (1221 on file) | Begin Work | 0700 | | Thur 06 | | |
| ☐ Sick (See reverse) | ☐ For Military Leave (Orders reviewed) | Lunch-Out | 1200 | | Fri 07 | | |
| ☐ Late | ☐ For Court Leave (Summons reviewed) | Lunch-In | 1250 | | Sat 08 | | |
| ☐ COP | ☐ For Higher Level (1723 on file) | End Work | 1550 | | Sun 09 | | |
| ☒ Other: _____ | ☐ Scheme Training Testing, Qualifying (Memo on file) | | | | Mon 10 | | |

Remarks (Do not enter medical information)

Light Duty

Total Hours

| | | | | | Tue 11 | | |
|---|---|---|---|---|---|---|---|
| | | | | | Wed 12 | | |
| | | | | | Thur 13 | | |
| | | | | | Fri 14 | | |

I understand that the annual leave authorized in excess of amount available to me during the leave year will be changed to LWOP.

| Employee's Signature and Date | Signature of Person Recording Absence and Date | Signature of Supervisor and Date Notified |
|---|---|---|
| _____ 4/21/3 | | |

## Official Action on Application (Return copy of signed request to employee)

| ☐ Approved, not FMLA * | ☐ Approved, FMLA (See Publication 71) | ☐ Approved FMLA, Pending Documentation Noted on Reverse. | Signature of Supervisor and Date |
|---|---|---|---|
| ☒ Disapproved (Give reason): | | | 6/11/03 |

Come see me for time to make it up

☐ Ineligible for FMLA (Estimate eligibility date): _____   ☐ Continued on Reverse

Light duty

PS Form 3971, April 2001 (Page 1 of 2)

Warning: The furnishing of false information on this form may result in a fine of not more than $10,000 or imprisonment of not more than 5 years, or both. (18 U.S.C. 1001)

# DISCIPLINARY INTERVIEW (DAY IN COURT)

Office _LANCASTER_ , Phone # _(302) 654-0725_

EMPLOYEE'S NAME _BRIAN K. REINBOLD, PTFS CARRIER, 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_

DATE OF INTERVIEW _TH, 07/03/2003_ TIME OF INTERVIEW _9:10 AM._

UNION REPRESENTATIVE (if requested) _JEFF CUSHNER_

### INFRACTION (list events in detail: who, what, when, where, how)

Employee submitted PS Form 3971 for Fri. 06/27/03 To be excused due to Court appearance. Employee's request was Disapproved. Furthermore, Employee was instructed to report back to work at the end of his Court appointment; and submit administrative evidence substantiating the time he was released. (Instructions were given orally and via PS Form 3971)

### EMPLOYEES RESPONSE/STATEMENT IN DEFENSE

During the pre-disciplinary interview; employee did not make any efforts to explain his inability to report back to work; and/or his failure to submit adm. evidence. Employee acknowledge the Supervisor's contention that even though employee was given ample time to submit adm. evidence; employeeh failed once again to follow instructions of Supervisor; and failed to substantiate his absence.

### MANAGEMENT'S DECISION (what action is going to be taken)

LETTER OF WARNING _____      14 - DAY SUSPENSION _✓_

7 - DAY SUSPENSION _____      REMOVAL _____

CHARGE (S): 1. Failure To Follow Instructions of Supervisor 2. Failed To Submit Administrative Evidence 3. AWOL.

#### COMMENTS

on 06/27/03 PTFS Carrier Reinbold failed to report back to work at the end of his Court appointment; failed to call his Unit Supervisor his inability to report back to work as instructed; and failed as of this pre-disciplinary interview to submit adm. evidence, stating the time he was released as instructed by his Supervisor. Furthermore, when employee was questioned to the reason he has failed to submit adm. evidence; employee stated that

Supervisor's Signature ~~[signature crossed out]~~ SMS

He was too tired and got home late to look for the adm. evidence.

# REQUEST FOR DISCIPLINARY ACTION

TO: Higher Level Official

EMPLOYEE NAME: _Reinbold, Brian R._     SSN: 221 - 52 - 6643

ADDRESS OF RECORD: _3909 Delaware St._     _Wilmington_ _DE_ _19808-570_
                   Street Address             City    State   Zip + 4

CRAFT: _City PTF Carrier_     TOUR: _2_     PAY LOCATION: _452_

REMOVE TIME BADGE _____
(SUBMIT COPY OF 3972 WITH ANY ATAL ACTION)

**DISCIPLINARY ACTION REQUESTED:**                           LETER OF WARNING: _____

(SUBMIT COPY OF 3972 & 3971's WITH ANY              ** 7 DAY SUSPENSION    X
FTR REQUESTS FOR DISCIPLINARY ACTION)
                                                    ** 14 DAY SUSPENSION    ✓

                                                    REQUEST FOR REMOVAL    _____

** ON SUSPENSIONS - RECORD ELEMENTS OF EMPLOYEES PAST RECORD THAT HAVE BEEN
CONSIDERED IN ARRIVING AT THIS DECISION.

TYPE OF DISCIPLINARY ACTION _L.O.W_     DATE ISSUED _01/09/03_
_Notice of Suspension of 14 days or less_     _04/28/03_
IF SUSPENSION IS FOR FTR - LIST DATE OF LAST FTR DISCIPLINARY LETTER _____

RECOMMENDED CHARGE: _14 days Suspension_
_1. Failure to Follow Instructions of Sup. 2. Failure to submit acqu. ev._
_3. AWOL: Fri 06/27/03_

DATE OF INCIDENT: _Fri, 06/27/03_

SUPERVISORS STATEMENT: _On Fri 06/27/03 Employee had requested to be excused due to
court appointment. Employee's request via P.S. Form 3931 was disapproved on
06/21/03. Furthermore Employee was given oral and in writing instructions
to report to work when done with court appointment and was instructed to
submit acqu. evidence to show what time he was released.
Employee failed to report back to work upon court appointment completion as
he was instructed by his supervisor. Employee failed to call his own supervisor
his inability to report for duty; and Employee failed to submit acqu.
evidence stating what time he was released from the court. Employee given ample opportunity to submit acqu. evidence; yet he has failed
to submit any acqu. evidence to his supervisor._

DAY IN COURT GIVEN: _____ DATE: _____

SUBMITTED BY: _[signature]_     DATE: _____

CONCUR: _[signature]_     DATE: _7-3-03_

DO NOT CONCUR: _____     DATE: _____

# USPS-NALC JOINT STEP A
## RESOLUTION FORM

<u>N.A.L.C.</u>

<u>U.S. POSTAL SERVICE</u>

UNION REP _D MEIXELL_

MGT. REP _G VANDEVERE_

GRIEVANT _BRIAN REINBOLD_

OFFICE _LANC AV_

LOCAL UNION # _5-8-3_

DATE _11/20/03_

As a result of our discussion this date, it is mutually agreed that the above cited grievance is resolved in accordance with the following:

14 DAY SUSPENSION DATED 8/11/03 WILL BE REDUCED TO A 7 DAY SUSPENSION

Both parties agree that this settlement is non-precedent setting and will not be cited by either in any subsequent grievance or arbitration hearing.

_[signature]_ 11/20/03
Union Rep          Date

_[signature]_ 11/20/0_
Management Rep          Date

RIN00010

 **UNITED STATES**
**POSTAL SERVICE**

**Date:**      **August 11, 2003**

**Subject:**      **Notice of Fourteen-Day Suspension**

**To:**      **Brian K. Reinbold**
           **Letter Carrier**          **PL 462**
           **Lancaster Station 19805-9998**

This 14-Day Suspension is being issued to you for the following reason(s):

**CHARGE**      **DISCARDING DELIVERABLE MAIL**

Specifically, on July 25, 2003, the South Jersey District Function 4 Auditor, Norman Diehl brought to my attention that a large amount of UBBM was being accumulated throughout the Lancaster Station. When a random inspection of the mail was done, 35 pieces of mail that was deliverable from route 501 was recovered. You were assigned to route 501.

Mr. Diehl was also concerned about the high volume of marriage mail being discarded. Once again by random inspection of mail being held, we discovered six ADVO cards in the UBBM tub that you should have handed off to Route # 502. Mr. Diehl and I also observed that you had twenty three customer's mail being held, for various reasons. However, not one of these customers had an ADVO card or circular enclosed with the held mail. In addition, there were approximately twenty customers, who mail was being held since July 19, 2003. And there were no ADVO cards or circulars being held for these customers. Based on the oldest indicia on one piece of mail was July, 11, 2003, it was determined that every customer who had mail on hold, should have had at least two ADVO cards and two sets of circulars. You admitted that you had discarded the ADVO cards and circulars.

**CHARGE 2: FAILURE TO FOLLOW INSTRUCTIONS**

On July 31, 2003, Eileen Muzzi, Manager, Customer Services gave you verbal instructions on ADVO Standard Operating Procedures. Ms. Muzzi also provided you with your personal copy of the ADVO Disposal Standard Operating Procedure. You were instructed to read the SOP, signed it and placed a copy in your route book. You failed to do that. You also took the cards to the street as a fourth bundle, and failed to leave vacancies and same number of circulars on top of your desk as instructed by your Manager and required per the SOP.

Future conduct of this nature can and will not be tolerated.

- 2 -

In addition, the following elements of your past record have been considered in arriving at this decision:

You were issued a 14-Day Suspension dated 7/7/03, for Failure to Follow Official Instructions

It is hoped that this official suspension will serve to impress upon you the seriousness of your action and that future discipline will not be necessary. If you are having difficulties, which I may not be aware of or if you need additional assistance or instructions for improving your performance, please, call on me or you may consult with other supervisors and we will assist you where possible. However, I must warn you that future deficiencies will result in more severe disciplinary action being taken against you. Such action may include reduction in grade and/or pay, or removal from the Postal Service.

While this suspension does not result in a loss of time or pay, it is equivalent to and is of the same degree of seriousness as a time-off suspension. It satisfies the same requirement for progressive discipline as a time-off suspension, and may be cited as an element of past discipline pursuant to Article 16.10.

You have the right to file a grievance under the grievance/arbitration procedure set forth in Article 15 of the National Agreement within 14 days of your receipt of this notice.

_____   08/11/03
Signature of Supervisor, Date

_____
Signature Concurring Official

Frank R. Rendon
Supervisor, Customer Services

I have received the original of this letter on ___08/13/03_____

Signature _____ Soc. Sec. # __221-__

Cc:    OPF
       Labor Relations
       File


**UNITED STATES**
**POSTAL SERVICE**

Date:           November 6, 2003

Subject:        Notice of Fourteen-Day Suspension

To:             Brian K. Reinbold
                Letter Carrier                    PL 462
                Lancaster Station 19805-9998

This 14-Day Suspension is being issued to you for the following reason(s):

**CHARGE      FAILURE TO FOLLOW INSTRUCTIONS**

Specifically, on October 25, 2003, you called in sick.  At that time of your call-in, I
instructed you to provide medical documentation to substantiate your absence.

However, when you returned to duty on October 27, 2003, you were asked for the
medical documentation.  You replied that you didn't need it, was not an acceptable
response.

Employees must obey the instructions of their supervisors.  If an employee has
reason to question the propriety of a supervisor's order, the individual will
nevertheless carry out the order and immediately file a protest in writing to the
official in charge of the installation, or appeal through official channels.   Future
conduct of this nature can and will not be tolerated.

In addition, the following elements of your past record have been considered in
arriving at this decision:

You were issued a 14-Day Suspension dated 8/11/03, for Discarding Deliverable
Mail and Failure to Follow Instructions.

You were issued a 14-Day Suspension dated 7/7/03, for Failure to Follow Official
Instructions

It is hoped that this official suspension will serve to impress upon you the
seriousness of your action and that future discipline will not be necessary.  If you are
having difficulties, which I may not be aware of or if you need additional assistance
or instructions for improving your performance, please, call on me or you may
consult with other supervisors and we will assist you where possible.  However, I
must warn you that future deficiencies will result in more severe disciplinary action

- 2 -

being taken against you. Such action may include reduction in grade and/or pay, or removal from the Postal Service.

While this suspension does not result in a loss of time or pay, it is equivalent to and is of the same degree of seriousness as a time-off suspension. It satisfies the same requirement for progressive discipline as a time-off suspension, and may be cited as an element of past discipline pursuant to Article 16.10.

You have the right to file a grievance under the grievance/arbitration procedure set forth in Article 15 of the National Agreement within 14 days of your receipt of this notice.

_____ 11/8/03
Signature of Supervisor, Date

_____
Signature Concurring Official
E.leon    M-2L

Dennis Money
Supervisor, Customer Services

I have received the original of this letter on 11/08/03

Signature _____ Soc. Sec. # _____

Cc:    OPF
       Labor Relations
       File

**UNITED STATES POSTAL SERVICE**

SOUTH JERSEY DISTRICT
DISPUTE RESOLUTION TEAM



**STEP B TEAM** DiDomenico
& Olive

**DISTRICT** South Jersey

| | |
|---|---|
| **DECISION:** | **RESOLVED** |
| **USPS #:** | C01N-4C-D 04182611 |
| **Branch Grievance #:** | 6-1-4 |
| **Branch:** | 191 |
| **Installation:** | Wilmington, DE |
| **Delivery Unit:** | Lancaster |
| **Zip Code:** | 19803 |
| **Finance Number:** | 09-6820 |
| **Date Step A Initiated:** | August 12, 2004 |
| **Step A Meeting Date:** | August 31, 2004 |
| **Date Received at Step B:** | September 2, 2004 |
| **Step B Decision Date:** | September 13, 2004 |
| **Issue Code and Subject:** | 16.1010, 16.5000, REMOVAL |
| **Type:** | Discipline |
| **Grievant's Name:** | Brian Reinbold |

**ISSUE**

Did Management have just cause under Article 16 of the National Agreement to issue a "Notice of Removal" for "Failure to Follow Instructions" and if not, what is the appropriate remedy?

**DECISION**

The Dispute Resolution Team has **RESOLVED** this issue. Management did have just cause to issue discipline. However, the Notice of Removal will be reduced to a thirty (30) day, four (4) week loss of pay, suspension. The suspension will start the date of this decision. On the day Carrier Reinbold returns to work, he will be given time to read the office Standard Operating Procedure.

**EXPLANATION**

In a letter dated July 21, 2004, Carrier Reinbold was notified of the Postal Service's intent to remove him from the Postal Service for "Failure to Follow Instructions". In the letter Management contends that on Saturday, July 10, 2004 he,

> Was present at a 5 minute floor meeting where his Supervisor informed all Carriers in 19805 that they were 9 routes down for the office.

At approximately 2:40 PM he returned to the station and was pushing a hamper from his vehicle. His Supervisor called his name and told him that he had an hour and a half pivot on route 519 in the office.

He continued pushing the hamper and did not respond. The Supervisor waited until Carrier Reinbold stopped to call his name again. Carrier Reinbold looked directly at the Supervisor, the Supervisor again told him about the pivot, but he again failed to respond.

Carrier Reinbold then entered the building, cleared his accountables, clocked out and left the building without delivering the pivot.

Carrier Reinbold had requested that morning to have a pivot piece on either route 505 or 519, thus he knew that he was going to get additional work that day.

During Carrier Reinbold's Day in Court, when questioned about his actions, he responded "I have no comment at this time".

Elements of his past record that were considered in arriving at this decision were,

A 14-Day Suspension dated November 6, 2003 for Failure to Follow Instructions.

A 7-Day Suspension dated August 11, 2003 for Discarding Deliverable Mail and Failure to Follow Instructions.

A Letter of Warning dated July 7, 2003 for Failure to Follow Instructions.

The Union contends that,

Although the Lancaster Avenue SOP was revised effective June 14, 2004 and placed in the Carrier Route Books, the Carriers were never given the time to read it.

The SOP that is practiced is that either a PS Form 3996 is given to the Carrier doing the pivot or the pivot is brought out to the Carrier on the street. This was not done in this case. In this case Supervisor Money yelled across the parking lot at a distance of over 100', and when the Carrier did not acknowledge him, he should have spoken to him face to face.

The Discipline is punitive rather than progressive. Even though Carrier Reinbold has prior discipline, he has been performing his duties for over 6 months without incident and in fact has been told this by his regular immediate Supervisor.

This is the second time that Mr. Money has had a problem with giving instructions to Carrier Reinbold. They submitted a copy of a prior grievance resolve to reinforce this contention.

The severity of the discipline is not reasonable because the Supervisor is also culpable by his actions. He should have made sure that the Carrier understood his instructions.

In accordance with Article 16, Section 5, Carrier Reinbold should remain on the job or on the clock until the Step B decision has been rendered or fourteen (14) days after his appeal is received by the Step B Team.

In Management's Contentions/Response to the Union's contentions they mostly restate what was written in the letter. To the Union's contention about if there is a rule they responded that, "Mr. Reinbold affirms his knowledge of the requirement in a statement he submitted to an incident on December 26, 2002. In this he states, 'In a meeting with all the PTF's and Dennis supervisor for zone 5 we were told when we got back off the street to check with a supervisor to see if we were done.'". They submitted a copy of the statement signed by Carrier Reinbold and the Union does not dispute what was written. Management also contends that at Carrier Reinbold's "Day in Court" he did not explain his actions, he would only respond, "I have no statement at this time".

In Carrier Reinbold's statement he contends that when he reported for work he asked Supervisor Money "what routes we had opened" with Supervisor Money replying "he wasn't sure yet that he would know better in a while". Carrier Reinbold then asked if he "could get the piece on Rt. 505 that I had been getting". Supervisor Money replied, "he didn't know". When Supervisor Money came around and told Carrier Reinbold that he "was somewhere around a half hour under" on his assignment, Carrier Reinbold again asked if he "could get a piece on 505". Supervisor Money responded that "he was sending it out whole and would see". Carrier Reinbold then states that he returned to the office at about 2:15 PM. As he came up the walkway to go into the building, "Mr. Money was getting out of his car and walking toward an LLV". He then contends that the Carrier in the LLV "was being reprimanded for talking on a cell phone while driving". He then "proceeded to go into the building and put my things away and get cleared of my accountable and go home". He then insists that he was never told that he "had a piece or instructed that I would have one".

In the Union's Additions and Corrections, the NALC President contends that he and Management's Formal A met at the Lancaster Avenue Station, spoke with the involved individuals including one of the witnesses. They then measured the distance between where Supervisor Money and Carrier Reinbold's incident took place and agreed that it was from thirty (30) to thirty three (33) feet. The Union contends this to be too far a distance and that the instructions should have been given face to face. Supervisor Money also stated that there was a possibility that Carrier Reinbold did not hear him, but that since Carrier Reinbold looked right at him, he must have heard. Supervisor Money also stated that Carrier Reinbold has been a good employee when he wants to be.

Management did not dispute the Union's Additions and Corrections.



RIN00126

Based on the evidence in the file the Dispute Resolution Team agrees that Supervisor Money should have spoken directly to Carrier Reinbold with the instructions. As contended by the Union, there was a previous grievance filed in which the Team ruled that instructions given over the intercom is not sufficient to prove that the Carrier was given the instructions. The same would apply to shouting approximately thirty (30) to thirty five (35) feet across the parking lot. Supervisor Money should have spoken face to face with Carrier Reinbold.

However, we also agree that Carrier Reinbold knew he was going to be pivoting something on the day in question and he knows what the SOP is in regards to checking with the Supervisor before leaving for the day. He does not even mention the floor meeting in his statement yet admits to leaving before he even worked an eight hour day.

Our rationale for reducing the removal is based on the above and the fact that it appears that Carrier Reinbold is trying to correct his behavior; he just needs to do so all the time, not just for six months. We also agree that Carrier Reinbold has become indifferent to previously issued discipline and does not grasp the severity of what it means. Hopefully with a loss of pay suspension he will realize that he has to follow the instructions of his Supervisors or he could be removed from the Postal Service.

The Dispute Resolution Team agrees that in accordance to Article 16, Section 5 of the National Agreement, Carrier Reinbold should be in a pay status, either on the job or on the clock, until either the date of this decision or fourteen (14) days from the date the B Team received the appeal, whichever is sooner. This is found on page 16-7 of the JCAM. We would expect Management to correctly state this if they unfortunately have the need to issue any more removals.

_____ 9-13-04          _____ 9/13/04
Russell J. Olive Jr.          DATE          Edward DiDomenico          DATE
NALC STEP B REPRESENTATIVE          USPS STEP B REPRESENTATIVE

cc:     Step A Parties
        Nat'l Business Agent, NALC
        Human Resources Manager
        District Labor Relations
        Area Labor Relations
        Dispute Resolution Team File
        POOM

PO Box 9001
Bellmawr, NJ  08099-9401
(856) 933-6044/6017
Fax: (856) 933-4447

RIN00127


**UNITED STATES**
**POSTAL SERVICE**
P O Box 7500
Wilmington, DE 19803-7500

September 16, 2004

Brian Reinbold
3909 Delaware Street
Wilmington, DE 19808-5709

Subject: Suspension/Return to duty date

As a result of a Step B decision pertaining to your appeal of the Removal
Notice from the U. S. Postal Service, dated July 21, 2004, your case has been
resolved with the result being the removal is reduced to a thirty (30) day, four
(4) week loss of pay, suspension. The suspension started with the date of the
Step B decision, September 13, 2004. Your four (4) week loss of pay will start
on that date. A copy of their decision is enclosed.

You are therefore being notified that you will be scheduled to return to work
on Tuesday, October 12, 2004 at 7:30 a.m. Upon returning to work you are to
immediately report to your supervisor for scheduled training.

Should you have any questions pertaining to your schedule, you should
contact Lancaster Avenue Station Manager Eileen Muzzi.

Sincerely,

Douglas F. Shiflet
Postmaster

RIN00128

SUPERVISOR CUSTOMER SERVICES
LANCASTER STATION


**UNITED STATES**
**POSTAL SERVICE**

DATE:        July 21, 2004

SUBJECT:     Notice of Removal

TO:          Brian Reinbold                    Cert#70041160000630667003
             City Carrier                      +1 copy via Regular Mail
             Lancaster Avenue Station
             Pay Loc 452
             SSN: 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

You are hereby notified that you will be removed from the Postal Service on August 27, 2004.
The reason(s) for the action are:

CHARGE:    FAILURE TO FOLLOW INSTRUCTIONS

Specifically, on Saturday, July 10, 2004, you were present at my 5 minute floor meeting where I
informed all the carriers in 19805 that we were 9 routes down for the entire office. At
approximately 2:40 pm you returned to the station. You were pushing a hamper from your
vehicle. I called your name and told you that you had a 1.50 hours pivot on route 519 in the
office. You continued pushing the hamper. You did not respond. I waited until you stopped,
called your name again and you looked directly at me. I told you again that you had a 1.50
hours pivot on route 519 in the office, you did not verbally respond. You entered the building,
had your accountables cleared and clocked out, without delivering the pivot on route 519. That
morning you requested a pivot piece on either route 505 or route 519, thus you knew that you
were going to get a piece. During the Day In Court, I asked you: What made you think that you
were not going to receive a pivot piece? Did you not hear me when I said that the office was
down 9 routes when I gave my 5 minute talk in the morning? You answered both questions
with: "I have no statement at this time." Station Manager Eileen Muzzi asked you if you
understood that this Day In Court was a chance for you to tell your side of the story and you
stated that you understood. You also failed to follow our SOP. All PTF carriers are required to
see the closing supervisor prior to clocking out. My instructions to you concerning the pivot on
route 519 were also witnessed by two fellow employees. Your blatant disregard for my
instructions cannot and will not be tolerated. Your failure to follow instructions which are also
outlined in the Standard Operations Procedures for the office is unacceptable. You as well as
all the carriers in the office have been made aware of the SOP. Item #19 under the PM Section
states; "If you return is earlier than expected, see a supervisor for further instructions. Leave
may be granted. (All PTF's are required to see the closing supervisor prior to clocking out)."
Before clocking out you were to see the closing supervisor. You did not follow the instruction
contained in the SOP.

Employees must obey the instructions of their supervisors. If an employee has reason to
question the propriety of a supervisor's order, the individual will nevertheless carry out the order
and immediately file a protest in writing to the official in charge of the installation, or appeal
through official channels.

In addition, the following elements of your past record have been considered in arriving at this decision:

> You were issued a 14-Day Suspension dated November 6, 2003, for Failure to Follow Instructions.

> You were issued a 7-Day Suspension dated August 11, 2003, for Discarding Deliverable Mail and Failure to Follow Instructions.

> You were issued a Letter of Warning dated July 7, 2003, for Failure to Follow Instructions.

You have the right to file a grievance under the grievance/arbitration procedure set forth in Article 15 of the National Agreement within 14 days of your receipt of this notice.

If this action is reversed or modified on appeal, back pay may be allowed unless the appropriate award or decision specifies otherwise, only if you have made reasonable efforts to obtain alternate employment during the potential back pay period. The documentation, which you must maintain and present to support a back pay claim, is described in Part 436 of the Employee and Labor Relations Manual.


Dennis Money
Supervisor, Customer Services

Eileen Muzzi
Manager, Customer Services
(Concurring Official)


I have received the original of this letter on _____

Signature _____ Soc. Sec. # _____

cc:  File
     Labor Relations
     Personnel - OPF
     Postmaster
     PSDS

RIN00130

LABOR RELATIONS SPECIALIST
SOUTH JERSEY DISTRICT





**UNITED STATES**
**POSTAL SERVICE**

# A NOTE FROM
# LABOR RELATION



December 16 2004

Personnel:

Per the attached Dispute Resolution Decision, please remove Letter Carrier Brian Reinbold from postal rolls, effective December 16, 2004.

Isacce Morris
Labor Relations Specialist
302-323-2248

cc: Eileen Muzzi
    Patricia Volk

P.O. BOX 10,000
WILMINGTON, DE 198509401
302-323-2248
FAX: 302-323-3709

RIN00142

 **UNITED STATES POSTAL SERVICE**

SOUTH JERSEY DISTRICT
DISPUTE RESOLUTION TEAM



**STEP B TEAM** DiDomenico
& Olive

**DISTRICT** South Jersey



| | |
|---|---|
| **DECISION:** | **RESOLVED** |
| **USPS #:** | C01N-4C-D 05019494 |
| **Branch Grievance #:** | 5-13-04 |
| **Branch:** | 191 |
| **Installation:** | Wilmington. DE |
| **Delivery Unit:** | Lancaster |
| **Zip Code:** | 19805 |
| **Finance Number:** | 09-6820 |
| **Date Step A Initiated:** | November 20, 2004 |
| **Step A Meeting Date:** | November 30, 2004 |
| **Date Received at Step B:** | December 3, 2004 |
| **Step B Decision Date:** | December 15, 2004 |
| **Issue Code and Subject:** | 16.1010, 16.5000 Just Cause, REMOVAL |
| **Type:** | Discipline |
| **Grievant's Name:** | Brian Reinbold |

## ISSUE

Did Management have Just Cause under Article 16 of the National Agreement when it issued a Notice of Removal to Carrier Reinbold for "Failure to Follow Instructions" and if not what is the appropriate remedy?

## DECISION

The Dispute Resolution Team has **RESOLVED** this issue. Management did have just cause when it issued the Notice of Removal to Carrier Reinbold. Carrier Reinbold will be removed from the Postal Service as of the date of this decision.

## EXPLANATION

Carrier Reinbold was issued a Notice of Removal for Failure to Follow Instructions dated October 27, 2004. Carrier Reinbold was authorized .50 units of overtime on October 20, 2004 and proceeded to work one (1) hour and 41 units of overtime. The employee was also charged with not following the S.O.P. which in part states:

"*No employee is to case mail and/or go over mark ups and bad mail (missent/missorts) on overtime unless authorized.*

RIN00143

Management contends that Carrier Reinbold not only expanded his street time, but ignored the instructions given to him by Supervisor Burns on the morning of October 20 regarding the handling of mail that was brought back from the street. Supervisor Burns states that Shop Steward Jeff Cushner was present during this meeting and not only did Supervisor Burns instruct the employee on this procedure, but Steward Cushner also reiterated to Carrier Reinbold what his responsibilities were in handling mail being brought back from the street.

The Union does not dispute that this meeting took place and what was said. It is apparent that Carrier Reinbold just chose to ignore the instructions he was given that morning. He worked unauthorized overtime handling the mail that he brought back from the street.

Supervisor Burns contends that when he questioned Carrier Reinbold as to what he had been doing for the past half hour and why it took him over an hour to get back to the office from his last street scan, the employee remained silent. On October 22, 2004 Mr. Reinbold was given his Day in Court Interview with Steward Cushner present. When Carrier Reinbold was confronted with the charges, Supervisor Burns states that he became belligerent and very confrontational and stated that Management was out to get him. This is not disputed by the Union or Carrier Reinbold.

The Union's main contention is that Carrier Reinbold is being singled out because he was issued a Notice of Removal dated July 21, 2004 for Failure Follow Instructions" which was reduced by the Dispute Resolution Team to a 30 day lost time suspension. He reported back to duty on October 15 2004 after serving his 30 day suspension.

There is no documentation in the file that would support this contention. There is no dispute that the Carrier did not follow the instructions that he was given by Management the morning that he committed these infractions. This employee has been given numerous chances and opportunities to improve his work ethic and performance as indicated by his previous discipline record. The Dispute Resolution Team finds it hard to understand how an employee who just returned from serving a 30 Day – Loss of Pay Suspension for "Failure to Follow Instructions" would just ignore the instructions given to him by his Supervisor. In the Step B decision reducing the Removal to the Loss of Pay Suspension, the Team stated that,

> "*We also agree that Carrier Reinbold has become indifferent to previously issued discipline and does not grasp the severity of what it means. Hopefully with a loss of pay suspension **he will realize that he has to follow the instructions of his Supervisors or HE COULD BE REMOVED from the Postal Service". (Emphasis added)***

Carrier Reinbold then remains silent when questioned about his actions, becomes belligerent and confrontational at his day in court instead of explaining his actions. Weeks later, only after receiving the "Notice of Removal", does he write a "detailed" explanation of what transpired"

It is apparent that Carrier Reinbold has no intention of improving his work performance or following the instructions of his Supervisor(s). The Removal action is progressive and for just cause.

_Russell J. Olive_ 12-15-04          _Edward DiDomenico_ 12/15/04
Russell J. Olive Jr.    DATE          Edward DiDomenico    DATE
NALC STEP B REPRESENTATIVE           USPS STEP B REPRESENTATIVE

cc:    Step A Parties
       Nat'l Business Agent, NALC
       Human Resources Manager
       District Labor Relations
       Area Labor Relations
       Dispute Resolution Team File
       POOM

PO Box 9001
Bellmawr, NJ 08099-9401
(856) 933-6044/6017
Fax: (856) 933-4447

RIN00145

LANCASTER STATION

**UNITED STATES**
**POSTAL SERVICE**

DATE: October 27, 2004

SUBJECT: NOTICE OF REMOVAL

TO:      Brian Reinbold
         City Carrier
         Lancaster Avenue Station
         SSN# 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

You are hereby notified that you will be removed from the Postal Service on November 26, 2004. The reason(s) for the action are:

CHARGE: FAILURE TO FOLLOW INSTRUCTIONS

Specifically, on October 20, 2004 you were instructed to work ½ hour of overtime on route 501. You called into the office around 3pm, stating this is 501, "I will be in 15 minutes later than discussed." You gave no reasonable explanation for your overrun of time. Upon returning to the office that night at 16:34pm, you stayed on the clock for another 46 units of overtime. You were sorting mail that you brought back from the street. Earlier that day, I spoke to you and the shop steward in the office, where I instructed you that you were not to handle the mail that you bring back from the street in overtime. I said that could wait until the next morning. You have read the SOP, which states that *"no employee is to case mail and/or go over mark ups and bad mail (missents/missorts) on overtime unless authorized."* You were authorized 50 units of overtime and you used 1 hour and 41 units that day. You did not follow the instruction contained in the SOP, which you were given time to read. After reading the SOP for this office, you also signed a individual training record affirming that you read it, in its entirety.

Employees must obey the instructions of their supervisors. If an employee has reason to question the propriety of a supervisor's order, the individual will nevertheless carry out the order and immediately file a protest in writing to the official in charge of the installation, or appeal through official channels.

In addition, the following elements of your past record have been considered in arriving at this decision:

1. You were issued a 30- day Suspension dated September 13, 2004 for Failure to Follow Instructions.

2. You were issued a 14-Day Suspension dated November 6, 2003 for Failure to Follow Instructions.

3 You were issued a 7-Day Suspension dated August 11, 2003 for Discarding Deliverable Mail and Failure to Follow Instructions.

4. You were issued a Letter of Warning dated July 7, 2003 for Failure to Follow Instructions.

You have the right to file a grievance under the grievance/arbitration procedure set forth in Article 15 of the National Agreement within 14 days of your receipt of this notice. **This removal will be deferred until a decision is made on the grievance, if one is filed, at the Step B level of the NALC-USPS Joint Dispute Resolution Process, or 14 calendar days after the appeal is received at Step B, whichever comes first.**

Kevin Burns
Supervisor Customer Services

Eileen Muzzi
Manager Customer Service
(Concurring Official)

I received the original of this on_____

Employee Signature

Cc: File
    Labor Relations
    OPF
    Postmaster
    PSDS

# UNION'S OFFICIAL REQUEST FOR INFORMATION FORM

In accordance with the provisions of Articles 17 and 31 of the National Agreement, the union hereby officially requests information necessary to determine whether to proceed with a grievance.

As a designated representative of the NALC, I request the following:

_X_     Any _and all_ information and documents taken into consideration by management, in reaching the decision to impose the disciplinary action. This includes a brief written narrative (signed by management official) detailing any information which does not appear on an official document to be provided.

This request relates to the disciplinary action issued on _____ to the following city carrier __B Reinbold__

_X_     The following information and/or documents relating to a potential contractual violation:

__Everything Report for 10/30/4__

_____

_____

_____

| | | |
|---|---|---|
| _JSC_ | _SS_ | _11/3/4_ |
| Signature- requesting union rep | Title of union rep | Date |
| | _O SJ_ | _11/3/04_ |
| Signature- receiving mgmt rep | Title of mgmt rep | Date |

## UNION'S OFFICIAL REQUEST FOR INFORMATION FORM

In accordance with the provisions of Articles 17 and 31 of the National Agreement, the union hereby officially requests information necessary to determine whether to proceed with a grievance.

As a designated representative of the NALC, I request the following:

_X_    Any _and all_ information and documents taken into consideration by management, in reaching the decision to impose the disciplinary action. This includes a brief written narrative (signed by management official) detailing any information which does not appear on an official document to be provided.

This request relates to the disciplinary action issued on _____ to the following city carrier ___B___Reinbold_____

_X_    The following information and/or documents relating to a potential contractual violation:

Copy of Signed S.O.P.

_____

_____

_____


_TBSCL_____     _SS_____     _11/3/4_
Signature- requesting union rep    Title of union rep    Date


_/_____     _C.S.)_____     _11/3/6 or_
Signature- receiving mgmt rep    Title of mgmt rep    Date

RIN00158

# UNION'S OFFICIAL REQUEST FOR INFORMATION FORM

In accordance with the provisions of Articles 17 and 31 of the National Agreement, the union hereby officially requests information necessary to determine whether to proceed with a grievance.

As a designated representative of the NALC, I request the following:

_____ Any *and all* information and documents taken into consideration by management, in reaching the decision to impose the disciplinary action. This includes a brief written narrative (signed by management official) detailing any information which does not appear on an official document to be provided.

This request relates to the disciplinary action issued on _____ to the following city carrier _B Reinbold_____

___X___ The following information and/or documents relating to a potential contractual violation:

_Any Statements written about the Date In Question_

| | | |
|---|---|---|
| Signature- requesting union rep | Title of union rep | Date |
| Signature- receiving mgmt rep | Title of mgmt rep | Date |

# UNIONS STATEMENT

BRIAN REINBOLD IS CHARGED WITH FAILURE TO FOLLOW INSTRUCTIONS. BRIAN RAN LATE ON THE STREET ON 10/20/04. HE FOLLOWED PROCEDURES BY CALLING IN TO LET THE SUPERVISOR KNOW HE WAS RUNNING LATE. WHEN HE CAME BACK HE TOOK MORE TIME THAN NORMAL TO GET CLEARED AND CLEANED UP. QUESTION, WHY DIDN'T EITHER KEVIN OR KARLA, IN A SUPERVISOR ROLE, GO OVER AND FIND OUT WANT WAS TAKING SO LONG? IN BRIAN'S STATEMENT HA SAID HE WAS LOOKING FOR A RETURN RECEIPT THAT HAD SIGNED FOR.

BRIAN IS BEING HELD TO A HIGHER STANDARD, BECAUSE OF HIS LAST CHANCE AGREEMENT, THAN OTHER CARRIERS. THIS PROBABLY WOULD HAVE NOT BEEN AS BIG AN ISSUE IF IT WERE NOT FOR THE LAST CHANCE AGREEMENT.

THIS NOTICE OF REMOVAL SHOULD BE RECINDED.

**Union's Statement**
**President Bob Wilkerson**
Reinbold, Grievance # 5-13-4

Since Mr. Reinbold's return to work at Lancaster Ave. he has been closely watch and scrutinized. Every member of Management has given him instructions every time he turned around. Mr. Reinbold was to return to work on the 12th of October but management failed to properly notify him by mail. Mr. Reinbold did file a change of address with Personnel in April of 2004. Wilmington Management sent the notification letter to his old street address. The Union had to contact him and inform him of his reporting date. This was done on the 14th of October and he reported to Lancaster that day. It was in the afternoon and he was instructed to report at 7 am the following morning (Friday). I believe that Brian Reinbold was targeted from his first day back, due to the fact he actually reported 3 days later than they wanted, but this was due to their failure not his.

Prior to Mr. Reinbold returning from his suspension imposed by the Step B Team, Greg Vandevere and I discussed the impending situation that he would be facing and we were attempting to schedule a meeting between Reinbold and Lancaster Ave Management. This meeting was to be facilitated by Greg and I. We knew that the situation would be precarious at best and thought we might intercede to prevent what did ultimately occur.

The meeting never occurred prior to the Removal Action because I had just returned from knee surgery and somebody or another was unavailable. But we still had hopes that a meeting would be scheduled when the hammer fell. I feel that management was out to get Brian from day one. And it only took them about a week. It was my hope that if both parties felt they could not work together that we could have had Brian transferred to another station in Wilmington. This Letter of Removal is defiantly punitive and not corrective by any sense of the imagination.

*Robert M Wilkerson*



# UNDISPUTED FACTS

1) BRIAN WAS AUTHORIZED 30 MINS OT

2) BRIAN SIGNED FORM 2548-03, STATING HE READ AND UNDERSTOOD THE CARRIER SOP.

3) BRIAN CALLED TO INFORM MANAGEMENT THAT HE WAS RUNNING 15MINS PLUS OVER HIS ESTIMATED TIME.

# DISPUTED FACTS

1) BRIAN STATED HE DIDN'T UNDERSTAND # 18 OF THE SOP.

2) BRIAN SAID HE IDENTIFIED HIMSELF WHEN HE CALLED IN. KARLA SAID HE JUST HUNG UP AFTER SAYING HE WAS GOING TO BE LATE.

3) KEVIN SAID IN HIS STATEMENT THAT" HE BROUGHT BACK MAIL FROM THE STREET AND COMMENCED TO HANDLE THAT MAIL FOR 50 UNITS." BRIAN MOVED INTO THE THE OFFICE AT 16.34 AND ENDED TOUR AT 16.80. A DIFFERENCE OF 46 UNITS NOT 50.

4) DURING DAY IN COURT MEETING BRIAN QUESTIONED KEVIN WHEN HE SAID BRIAN WAS CASING MAIL AT HIS CASE. BRIAN ASKED IF KEVIN SAW HIM CASING MAIL. KEVIN SAID HE ASSUMED HE WAS CASING MAIL BECAUSE OF THE AMOUNT OF TIME SPENT AT THE CASE.

RIN00166

**UNION'S CONTENTIONS**
Reinbold, Brian-Grievance # 5-13-4

1) Carrier Reinbold was instructed to work 30 minutes of overtime. Management claims he was 9 minutes under plus they gave him 30 extra minutes to cleanup the route on the street. His instructions were to record the houses that were vacant with mail in the boxes. Mail that was delivered while he was off.

2) Supervisor Burns says that the Workload Status Report showed the grievant to be 9 minutes under and that the grievant agreed. In fact the Supervisor just quotes from the status report and then claims that all carriers agree. The status report (DOIS) is flawed; there is a grievance at the National level pending. Carriers are told by their Supervisor what this report says and are expected to adhere to this time. In fact most, if not all Carriers disagree with the "numbers" and have learned to turn a deaf ear to management. Mr. Reinbold in-fact disagreed with the time needed to perform his duties, not knowing how much time he would need on the street.

3) Mr. Reinbold did in-fact follow SOP by calling at around 3:00 pm for further instructions. He identified himself and said he would be late. Supervisor Aguirre had no response and the conversation was ended.

4) The 14-day Suspension dated November 6, 2003 was to be removed on October 25, 2004 and therefore was not citable.

5) Mr. Burns stated to the Shop Steward that he was standing right next to Supervisor Karla Aguirre when the grievant called at 3:00 pm

6) Supervisor Aguirre was the person who initially cleared the grievant, she told Reinbold that he was missing a return receipt and at that time he returned to Route 501's case to retrieve the receipt.

7) Mr. Reinbold claims that he was instructed by Supervisor Money not to handle his DPS errors in the back of his vehicle.

8) Mr. Reinbold has been working under close scrutiny by all the Supervisor and Manager at Lancaster. He can't turn around with out some one watching and questioning his ever move. On October 22, 2004 after the "Day in Court", Mr. Reinbold did feel stressed, filed a 3971 for sick leave and left. He had an appointment with medical personnel and provided documentation upon returning to work.

9) Supervisor Burn's statement is filled with mistakes i.e., on the 3867 there are no initials of anyone clearing the grievant. It appears that Mr. Burns added his scribble after the fact and in the wrong place. Also Mr. Burns states that the Removal was issued on October 29, 2004 when in fact the grievant was still on Sick leave and the Notice of Removal was issued on November 1, 2004. Also in his statement he claims to still be in the building but then told the Shop Steward that he was standing right next to Karla when Reinbold called. Karla confirms this in her statement.

10) With all of these mistakes maybe management is not to be totally believed about their terms of events. The Union believes that the Management team at Lancaster Ave. is only trying to find any excuse to fire Mr. Reinbold.

11) At no time does management mention the extra time spent by the grievant and his Shop Steward in the office with their Supervisor that morning to discuss all the things the grievant does day in and day out.

*Brian Reinbold Statement*

*U Br*

This is a statement requested by my union for the steps I did from the time I got back to the Lancaster Avenue Station on October 20, 2004 till I punched out to go home.

I returned back to the station around 4:13pm, I first parked my vehicle in its assigned spot and proceeded to go into the building get a hamper and swiped my time card back to the office. I then went out to my vehicle emptied it check to make sure no mail was left in it, I then scanned my return office scan and entered my end mileage. I was heading back into the building when another carrier was coming out, were I had a brief conversation with him, then I emptied my out going mail in the hamper on the dock put what I had in the out going meter tray and my empty trays and tubs in the a-frame on the dock. I then proceeded into the building headed over to my desk put my hard trays under my desk my bundle of mail on the desk and mark the parcels I brought back with the date and put them on the shelf where they belonged. I then returned the hamper to the package area went back grabbed my keys and accountable and proceeded to get cleared. I asked a clerk that was standing there if he was clearing and he said he be right back, after a couple of minutes I got on the intercom to have someone clear carriers as there was a couple in line. Supervisor Carla came over took my keys and said I was missing a return receipt. I went over to my desk went through the bundle of mail retrieved the return receipt and got cleared. I proceeded to go to the restroom when I came out walk over to Supervisor Carla and asked if there was anything else for me or did she want me to go out and help someone and she said no everything was ok. I went over grabbed my jacket turned off my light and proceeded to the time clock where I punched out.

Brian K Reinbold

*Brian Reinbold STATEMENT*

This is a statement requested by my union for situations that have accrued since I returned from work from a Step B decision of a 30day suspension:

October 14, 2004: was told by Supervisor Kevin Burns to report to work on October 15, 2004 at 7:00am

October 15, 2004: was given a Day in Court for not reporting to work on October 12 & 13, 2004 was given Office Duty SOP to read told I didn't understand some things especially #18 I was told to read it and sign the training sheet, had new vehicle assigned to me all my things were removed and my locker no longer had a lock on it some personnel items missing from my vehicle and locker.

October 16, 2004: asked for a claim form for the missing personnel items was told by Supervisor Burns I wasn't going to get one and that I was to deliver all mail no matter what and to make a list of all vacant houses and houses where mail was being left in the mailboxes and he would go out and determine what was good or bad address

October 18, 2004: was told by Supervisor Burns not to write my vehicle up anymore for maintenance, brakes and ER brake light or cleaning that it was fine just drive it

October 19, 2004: called into managers office by Supervisor Burns told to grow up stop acting like a three year old and not to right up the ER brake light shop steward present, called back to post office about scanner being broke said one would be brought out no one came out with a scanner went back to get one

October 20, 2004: called into office by Supervisor Burns said that any mail brought back off the street could be left for the next morning, later that morning Supervisor Burns he was going to write me up for missing a MSP scan point, told him I thought I've been hitting all them and this was the first time I've herd about it, told me were it was told him I was never informed about new scan point, said he was going out to check it and when he got back I was going to written up again. Around 3 I called back to post office told the closing supervisor I was running ~~fatter minutes+~~ then was discussed that morning, told to continue on     *(15) FIFTEEN plus*

October 21, 2004: OFF

October 22, 2004: given Day in Court by Supervisor Burns for a charges of Extending Street Time and Failure to Follow Instructions for 10/20/04 told supervisor Burns that I had parcels and was finishing his list and usual routine when I came back off the street asked if I was sorting mail and I told him I had to retrieve a return receipt I was missing, Supervisor Burns told shop steward he didn't know what I was doing at my case, went back to my case after Day in Court broke down ask to see a shop steward was told by Supervisor Burns no cause I saw him in the office. Wrote on a piece of paper that I was requesting shop steward time, was told I don't get shop steward time every time I ask for it by Supervisor Burns. After a little longer I could not focus and went outside to get a

shop steward from zone 7 to get help, when we walked back into the building I got shop steward time with my shop steward told him I needed to go home cause I felt like I might say something that I might regret and could not focus and broke down in tears, went home asked if I needed to fill out a 3971 was told yes went home called my doctor got an appointment that day

October 23, 2004: OFF

October 25, 2004: was called into office and asked if I had a doctors note by Supervisor Burns, gave him my doctors note was told it was not acceptable and he needed a doctors note saying I was not under duress and could be supervised and not to return to work until I had one, ask if that mint a shrink and he replied from a doctor that does that kind of of work, called EAP to set up an appointment and told them what I was told to get and they gave me some names and I called them and got an appoint for Thursday October 28, 2004

October 26, 2004 : OFF
October 27, 2004 : OFF

October 28, 2004: went to see the psychiatrist as instructed by Supervisor Burns, after meeting with him I was given a letter to give to the post office and return to work on November 1, 2004

October 29, 2004 : OFF
October 30, 2004 : OFF

November 1, 2004: went into work gave the doctors letter to Supervisor Burns was told to go into the office, was given a Letter of Removal the charge was Failure to Follow Instructions for 10/20/04 was told I was on administrative leave, had discussion back and forth about the day and was told that I had read the SOP and signed the training paper and it didn't matter if I didn't understand it to go home

Brian K. Reinbold

## UNION'S OFFICIAL REQUEST FOR INFORMATION FORM

In accordance with the provisions of Articles 17 and 31 of the National Agreement, the union hereby officially requests information necessary to determine whether to proceed with a grievance.

As a designated representative of the NALC, I request the following:

_X_      Any _and all_ information and documents taken into consideration by management, in reaching the decision to impose the disciplinary action. This includes a brief written narrative (signed by management official) detailing any information which does not appear on an official document to be provided.

This request relates to the disciplinary action issued on _____ to the following city carrier _B   Reusold_

_X_      The following information and/or documents relating to a potential contractual violation:

_3997 from   10/20/4_

_____

_____

_____

_____        _S.S_        _11/3/4_
Signature- requesting union rep        Title of union rep        Date

_____        _CSS_        _11/3/04_
Signature- receiving mgmt rep        Title of mgmt rep        Date

RIN00187

# ARTICLE 16    DISCIPLINE PROCEDURE

16.1    **Section 1. Principles**

In the administration of this Article, a basic principle shall be that discipline should be corrective in nature, rather than punitive. No employee may be disciplined or discharged except for just cause such as, but not limited to, insubordination, pilferage, intoxication (drugs or alcohol), incompetence, failure to perform work as requested, violation of the terms of this Agreement, or failure to observe safety rules and regulations. Any such discipline or discharge shall be subject to the grievance-arbitration procedure provided for in this Agreement, which could result in reinstatement and restitution, including back pay.

## Just Cause Principle

The principle that any discipline must be for "just cause" establishes a standard that must apply to any discipline or discharge of an employee. Simply put, the "just cause" provision requires a fair and provable justification for discipline.

"Just cause" is a "term of art" created by labor arbitrators. It has no precise definition. It contains no rigid rules that apply in the same way in each case of discipline or discharge. However, arbitrators frequently divide the question of just cause into six sub-questions and often apply the following criteria to determine whether the action was for just cause. These criteria are the *basic* considerations that the supervisor must use before initiating disciplinary action.

- **Is there a rule?** If so, was the employee aware of the rule? Was the employee forewarned of the disciplinary consequences for failure to follow the rule? It is not enough to say, "Well, everybody knows that rule," or, "We posted that rule 10 years ago." You may have to prove that the employee should have known of the rule. Certain standards of conduct are normally expected in the industrial environment and it is assumed by arbitrators that employees should be aware of these standards. For example, an employee charged with intoxication on duty, fighting on duty, pilferage, sabotage, insubordination, etc., may be generally assumed to have understood that these offenses are neither condoned nor acceptable, even though management may not have issued specific regulations to that effect.

- **Is the rule a reasonable rule?** Management must make sure rules are reasonable, based on the overall objective of safe and efficient work performance. Management's rules should be reasonably related to business efficiency, safe operation of our business, and the performance we might expect of the employee.

- **Is the rule consistently and equitably enforced?** A rule must be applied fairly and without discrimination. Consistent and equitable



RIN00192

enforcement is a critical factor, and claiming failure in this regard is one of the union's most successful defenses. The Postal Service has been overturned or reversed in some cases because of not consistently and equitably enforcing the rules. Consistently overlooking employee infractions and then disciplining without warning is one issue. If employees are consistently allowed to smoke in areas designated as *No Smoking* areas, it is not appropriate suddenly to start disciplining them for this violation. In such cases, management loses its right to discipline for that infraction, in effect, unless it first puts employees (and the unions) on notice of its intent to enforce that regulation again. Singling out employees for discipline is another issue. If several employees commit an offense, it is not equitable to discipline only one.

- **Was a thorough investigation completed?** Before administering the discipline, management must make an investigation to determine whether the employee committed the offense. Management must ensure that its investigation is thorough and objective. This is the employee's *day in court* privilege. Employees have the right to know with reasonable detail what the charges are and to be give a reasonable opportunity to defend themselves *before* the discipline is initiated.

- **Was the severity of the discipline reasonably related to the infraction itself and in line with that usually administered, as well as to the seriousness of the employee's past record?** The following is an example of what arbitrators may consider an inequitable discipline: If an installation consistently issues 5-day suspensions for a particular offense, it would be extremely difficult to justify why an employee with a past record similar to that of other disciplined employees was issued a 30-day suspension for the same offense. There is no precise definition of what establishes a good, fair, or bad record. Reasonable judgement must be used. An employee's record of previous offenses may never be used to establish guilt in a case you presently have under consideration, but it may be used to determine the appropriate disciplinary penalty.

- **Was the disciplinary action taken in a timely manner?** Disciplinary actions should be taken as promptly as possible after the offense has been committed.

### Corrective Rather than Punitive



The requirement that discipline be "corrective" rather than "punitive" is an essential element of the "just cause" principle. In short, it means that for most offenses management must issue discipline in a "progressive" fashion, issuing lesser discipline (e.g., a letter of warning) for a first offense and a pattern of increasingly severe discipline for succeeding offenses (e.g., short suspension, long suspension, discharge). The basis

RIN00193

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRIAN K. REINBOLD,

      Plaintiff,

      v,                       Civil Action No. 04-342-GMS

NATIONAL ASSOCIATION OF LETTER
CARRIERS BRANCH 1977,

      Defendant.

BRIAN K. REINBOLD,

      Plaintiff,

      v.                       Civil Action No. 05-47-GMS

UNITED STATES POSTAL SERVICE,
and NALC LOCAL 191,

      Defendant.

## CERTIFICATION OF CUSTODIAN OF RECORDS

1.     I, Sherry D. Jacobs, am employed by the United States Postal Service ("USPS") as

a Clerk in the Labor Relations Office of the South Jersey District Office. In that capacity I serve,

among other functions, as a custodian of records and files relating to the processing of grievances

by Postal employees in the Lancaster Avenue Station of the Wilmington Post Office during the

years 2003 and 2004.

2.     I have reviewed the documents attached as Exhibit 1 to the Opening Brief of the

United States Postal Service in Support of its Motion for Summary Judgment, and I hereby

certify, under penalty of perjury, that these documents are true and correct copies of records made

at or near the time of the matters set forth therein; by persons with knowledge of these matters;

that these records have been kept in the course of the regularly conducted activity of the USPS;

and they were made in the USPS' regularly conducted activity as a regular practice.


SHERRY D. JACOBS
Clerk, Labor Relations Office
South Jersey District

# Exhibit 2

# AGREEMENT

between
United States Postal Service
and

National Association of Letter
Carriers
AFL-CIO

## 2001–2006

Handbook EL-901

Article 15.5

use of arbitration. Commencing April 1, 1979, and quarterly thereafter, the Employer will furnish to the President of the Union a copy of a quarterly report containing the following information covering operation of the arbitration procedure at the National level, and for each Area separately:

(a) number of cases appealed to arbitration;

(b) number of cases scheduled for hearing;

(c) number of cases heard;

(d) number of scheduled hearing dates, if any, which were not used,

(e) the total number of cases pending but not scheduled at the end of the quarter.

(The preceding Article, Article 15, shall apply to Transitional Employees; additional provisions regarding Article 15 and Transitional Employees can be found in Appendix B.)

[see Memo, pages 180-186]

## ARTICLE 16

## DISCIPLINE PROCEDURE

### Section 1. Principles

In the administration of this Article, a basic principle shall be that discipline should be corrective in nature, rather than punitive. No employee may be disciplined or discharged except for just cause such as, but not limited to, insubordination, pilferage, intoxication (drugs or alcohol), incompetence, failure to perform work as requested, violation of the terms of this Agreement, or failure to observe safety rules and regulations. Any such discipline or discharge shall be subject to the grievance-arbitration procedure provided for in this Agreement, which could result in reinstatement and restitution, including back pay.

78

---

Article 15.5

### Section 2. Discussion

For minor offenses by an employee, management has a responsibility to discuss such matters with the employee. Discussions of this type shall be held in private between the employee and the supervisor. Such discussions are not considered discipline and are not grievable. Following such discussions, there is no prohibition against the supervisor and/or the employee making a personal notation of the date and subject matter for their own personal record(s). However, no notation or other information pertaining to such discussion shall be included in the employee's personnel folder. While such discussions may not be cited as an element of prior adverse record in any subsequent disciplinary action against an employee, they may be, where relevant and timely, relied upon to establish that employees have been made aware of their obligations and responsibilities.

### Section 3. Letter of Warning

A Letter of warning is a disciplinary notice in writing, identified as an official disciplinary letter of warning, which shall include an explanation of a deficiency or misconduct to be corrected.

[see Memo, page 187]

### Section 4. Suspensions of 14 Days or Less

In the case of discipline involving suspensions of fourteen (14) days or less, the employee against whom disciplinary action is sought to be initiated shall be served with a written notice of the charges against the employee and shall be further informed that he/she will be suspended. A suspended employee will remain on duty during the term of the suspension with no loss of pay. These disciplinary actions shall, however, be considered to be of the same corrective steps in the pattern of progressive discipline as the time-off suspensions. Such suspensions are equivalent to time-off suspensions and may be cited as elements of past discipline in subsequent discipline in accordance with Article 16.10.

### Section 5. Suspensions of More Than 14 Days or Discharge

In the case of suspensions of more than fourteen (14) days, or

79

Article 16.5

of discharge, any employee shall, unless otherwise provided herein, be entitled to an advance written notice of the charges against him/her and shall remain either on the job or on the clock at the option of the Employer for a period of thirty (30) days. Thereafter, the employee shall remain on the rolls (non-pay status) until disposition of the case has been had either by settlement with the Union or through exhaustion of the grievance-arbitration procedure. A preference eligible who chooses to appeal a suspension of more than fourteen (14) days or his/her discharge to the Merit Systems Protection Board (MSPB) rather than through the grievance-arbitration procedure shall remain on the rolls (non-pay status) until disposition of the case has been had either by settlement or through exhaustion of his/her MSPB appeal. When there is reasonable cause to believe an employee is guilty of a crime for which a sentence of imprisonment can be imposed, the Employer is not required to give the employee the full thirty (30) days advance notice in a discharge action, but shall give such lesser number of days advance written notice as under the circumstances is reasonable and can be justified. The employee is immediately removed from a pay status at the end of the notice period.

Section 6. Indefinite Suspension - Crime Situation

A. The Employer may indefinitely suspend an employee in those cases where the Employer has reasonable cause to believe an employee is guilty of a crime for which a sentence of imprisonment can be imposed. In such cases, the Employer is not required to give the employee the full thirty (30) days advance notice of indefinite suspension, but shall give such lesser number of days of advance written notice as under the circumstances is reasonable and can be justified. The employee is immediately removed from a pay status at the end of the notice period.

B. The just cause of an indefinite suspension is grievable. The arbitrator shall have the authority to reinstate and make the employee whole for the entire period of the indefinite suspension.

C. If after further investigation or after resolution of the criminal charges against the employee, the Employer deter-

Article 16.8

mines to return the employee to a pay status, the employee shall be entitled to back pay for the period that the indefinite suspension exceeded seventy (70) days, if the employee was otherwise available for duty, and without prejudice to any grievance filed under B above.

D. The Employer may take action to discharge an employee during the period of an indefinite suspension whether or not the criminal charges have been resolved, and whether or not such charges have been resolved in favor of the employee. Such action must be for just cause, and is subject to the requirements of Section 5 of this Article.

Section 7. Emergency Procedure

An employee may be immediately placed on an off-duty status (without pay) by the Employer, but remain on the rolls where the allegation involves intoxication (use of drugs or alcohol), pilferage, or failure to observe safety rules and regulations, or in cases where retaining the employee on duty may result in damage to U.S. Postal Service property, loss of mail or funds, or where the employee may be injurious to self or others. The employee shall remain on the rolls (non-pay status) until disposition of the case has been had. If it is proposed to suspend such an employee for more than thirty (30) days or discharge the employee, the emergency action taken under this Section may be made the subject of a separate grievance.

Section 8. Review of Discipline

In no case may a supervisor impose suspension or discharge upon an employee unless the proposed disciplinary action by the supervisor has first been reviewed and concurred in by the installation head or designee.

In post offices of twenty (20) or less employees, or where there is no higher level supervisor than the supervisor who proposes to initiate suspension or discharge, the proposed disciplinary action shall first be reviewed and concurred in by a higher authority outside such installation or post office before any proposed disciplinary action is taken.

Article 16.9

Section 9. Veterans' Preference

A preference eligible is not hereunder deprived of whatever rights of appeal are applicable under the Veterans' Preference Act. If the employee appeals under the Veterans' Preference Act, however, the time limits for appeal to arbitration and the normal contractual arbitration scheduling procedures are not to be delayed as a consequence of that appeal; if there is an MSPB appeal pending as of the date the arbitration is scheduled by the parties, the grievant waives access to the grievance-arbitration procedure beyond Step B.

Section 10. Employee Discipline Records

The records of a disciplinary action against an employee shall not be considered in any subsequent disciplinary action if there has been no disciplinary action initiated against the employee for a period of two years.

Upon the employee's written request, any disciplinary notice or decision letter will be removed from the employee's official personnel folder after two years if there has been no disciplinary action initiated against the employee in that two-year period.

(Additional provisions regarding the removal of Transitional Employees can be found in Appendix B.)

## ARTICLE 17

## REPRESENTATION

Section 1. Stewards

Stewards may be designated for the purpose of investigating, presenting and adjusting grievances.

Section 2. Appointment of Stewards

A. The Union will certify to the Employer in writing a steward or stewards and alternates in accordance with the

82

# USPS-NALC
# Joint Contract Administration Manual

*February 2004*


**UNITED STATES POSTAL SERVICE.**


**National Association of Letter Carriers**

# ARTICLE 16    DISCIPLINE PROCEDURE

**16.1**    Section 1. Principles

In the administration of this Article, a basic principle shall be that discipline should be corrective in nature, rather than punitive. No employee may be disciplined or discharged except for just cause such as, but not limited to, insubordination, pilferage, intoxication (drugs or alcohol), incompetence, failure to perform work as requested, violation of the terms of this Agreement, or failure to observe safety rules and regulations. Any such discipline or discharge shall be subject to the grievance-arbitration procedure provided for in this Agreement, which could result in reinstatement and restitution, including back pay.

### Just Cause Principle

The principle that any discipline must be for "just cause" establishes a standard that must apply to any discipline or discharge of an employee. Simply put, the "just cause" provision requires a fair and provable justification for discipline.

"Just cause" is a "term of art" created by labor arbitrators. It has no precise definition. It contains no rigid rules that apply in the same way in each case of discipline or discharge. However, arbitrators frequently divide the question of just cause into six sub-questions and often apply the following criteria to determine whether the action was for just cause. These criteria are the *basic* considerations that the supervisor must use before initiating disciplinary action.

- **Is there a rule?** If so, was the employee aware of the rule? Was the employee forewarned of the disciplinary consequences for failure to follow the rule? It is not enough to say, "Well, everybody knows that rule," or, "We posted that rule 10 years ago." You may have to prove that the employee should have known of the rule. Certain standards of conduct are normally expected in the industrial environment and it is assumed by arbitrators that employees should be aware of these standards. For example, an employee charged with intoxication on duty, fighting on duty, pilferage, sabotage, insubordination, etc., may be generally assumed to have understood that these offenses are neither condoned nor acceptable, even though management may not have issued specific regulations to that effect.

- **Is the rule a reasonable rule?** Management must make sure rules are reasonable, based on the overall objective of safe and efficient work performance. Management's rules should be reasonably related to business efficiency, safe operation of our business, and the performance we might expect of the employee.

- **Is the rule consistently and equitably enforced?** A rule must be applied fairly and without discrimination. Consistent and equitable



RIN00192

enforcement is a critical factor, and claiming failure in this regard is one of the union's most successful defenses. The Postal Service has been overturned or reversed in some cases because of not consistently and equitably enforcing the rules. Consistently overlooking employee infractions and then disciplining without warning is one issue. If employees are consistently allowed to smoke in areas designated as *No Smoking* areas, it is not appropriate suddenly to start disciplining them for this violation. In such cases, management loses its right to discipline for that infraction, in effect, unless it first puts employees (and the unions) on notice of its intent to enforce that regulation again. Singling out employees for discipline is another issue. If several employees commit an offense, it is not equitable to discipline only one.

**Was a thorough investigation completed?** Before administering the discipline, management must make an investigation to determine whether the employee committed the offense. Management must ensure that its investigation is thorough and objective. This is the employee's *day in court* privilege. Employees have the right to know with reasonable detail what the charges are and to be give a reasonable opportunity to defend themselves *before* the discipline is initiated.

**Was the severity of the discipline reasonably related to the infraction itself and in line with that usually administered, as well as to the seriousness of the employee's past record?** The following is an example of what arbitrators may consider an inequitable discipline: If an installation consistently issues 5-day suspensions for a particular offense, it would be extremely difficult to justify why an employee with a past record similar to that of other disciplined employees was issued a 30-day suspension for the same offense. There is no precise definition of what establishes a good, fair, or bad record. Reasonable judgement must be used. An employee's record of previous offenses may never be used to establish guilt in a case you presently have under consideration, but it may be used to determine the appropriate disciplinary penalty.

**Was the disciplinary action taken in a timely manner?** Disciplinary actions should be taken as promptly as possible after the offense has been committed.

## Corrective Rather than Punitive

The requirement that discipline be "corrective" rather than "punitive" is an essential element of the "just cause" principle. In short, it means that for most offenses management must issue discipline in a "progressive" fashion, issuing lesser discipline (e.g., a letter of warning) for a first offense and a pattern of increasingly severe discipline for succeeding offenses (e.g., short suspension, long suspension, discharge). The basis

RIN00193

of this principle of "corrective" or "progressive" discipline is that it is issued for the purpose of correcting or improving employee behavior and not as punishment or retribution.

**Unadjudicated Discipline.** The parties agree that arbitrators may not consider unadjudicated discipline cited in a disciplinary notice when determining the propriety of that disciplinary notice. When removal cases are scheduled for a hearing before the underlying discipline has been adjudicated, an arbitrator may grant a continuance of a hearing on the removal case pending resolution of the unadjudicated discipline (National Arbitrator Snow, E94N-4E-D 96075418, April 19, 1999 C-19372).

**Examples of behavior.** Article 16, Section 1 states several examples of misconduct which may constitute just cause for discipline. Some managers have mistakenly believed that because these behaviors are specifically listed in the contract, any discipline of employees for such behaviors is "automatically" for just cause. However, almost all arbitrators have recognized that these behaviors are intended as examples and that, in any event, even if particular type of misconduct constitutes just cause for some discipline, management still must prove that the behavior took place, that it was intentional, that the degree of discipline imposed was corrective rather than punitive, and so forth. So all of the usual rules of "just cause" apply to these specific examples of misconduct as well as to any other conduct for which management issues discipline.

**Remedies.** The last sentence of Section 1 establishes the principle that discipline may be overturned in the grievance-arbitration procedure and that remedies may be provided to the aggrieved employee—"reinstatement and restitution, including back pay." If union and management representatives settle a discipline grievance, the extent of remedies for improper discipline is determined as part of the settlement. If a case is pursued to arbitration, the arbitrator states the remedy in the award.

**Back pay:** The implementing regulations concerning the back pay provided for Article 16.1 are found in ELM Section 436. The parties agree that, while all grievance settlements or arbitration awards providing for a monetary remedy should be promptly paid, the following Memorandum of Understanding applies only to those back pay claims covered by ELM Section 436.

## CERTIFICATE OF SERVICE

I hereby certify that on **November 30, 2005**, I electronically filed an **OPENING BRIEF OF THE UNITED STATES POSTAL SERVICE IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using CM/ECF.  Notification of such filing will be electronically mailed to the following:

**Susan E. Kaufman, Esquire**
Heiman, Gouge & Kaufman, LLP
P.O. Box 1674
Wilmington, DE 19899
(302) 658-1800
skaufman@hgkde.com

and two copies of the foregoing **OPENING BRIEF OF THE UNITED STATES POSTAL SERVICE IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ,** will be mailed, via First Class U.S. Mail to the following:

**Brian K. Reinbold**
3909 Delaware Street
Wilmington, DE 19808
*Pro Se*


COLM F. CONNOLLY
United States Attorney

By:    /s/Patricia C. Hannigan
        Patricia C. Hannigan
        Assistant United States Attorney
        Delaware Bar I.D. No. 2145
        The Nemours Building
        1007 Orange Street, Suite 700
        P. O. Box 2046
        Wilmington, DE 19899-2046
        (302) 573-6277
        Patricia.Hannigan@usdoj.gov