IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRIAN K. REINBOLD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-342 (GMS) |
| | ) | Civil Action No. 05-47  (GMS) |
| NALC LOCAL 1977, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

**I.   INTRODUCTION**

On April 28, 2004 Brian K. Reinbold ("Reinbold") filed a lawsuit against the National Association of Letter Carriers ("NALC") Branch 1977 and NALC Branch 191 (the "NALC defendants") in the Court of Common Pleas for the State of Delaware, New Castle County. The complaint alleges that, between May 2001 and April 2004, the NALC defendants did not act in good faith in representing Reinbold under his collective bargaining agreement (the "CBA"). The NALC defendants subsequently removed the lawsuit to this court on May 27, 2004. On January 28, 2005, Reinbold filed a similar action against the United States Postal Service (the "USPS") and the NALC Branch 191, alleging that, between January 1, 2003 and December 31, 2004, the defendants engaged in unfair labor practices against him and failed to represent him per the CBA. Presently before the court is the USPS' motion for summary judgment. For the reasons that follow, the court will grant the motion.

**II.   BACKGROUND**

Reinbold's complaint does not provide any information other than his unfair labor, bad faith representation, and breach of the CBA claims. Additionally, Reinbold has not filed a response to

the USPS' motion. Therefore, the court will adopt the statement of facts set forth by the USPS in its memorandum in support of its motion, and provided by the exhibits to the memorandum. In 2003 and 2004, Reinbold was employed by the USPS as a "part-time flexible" letter carrier and assigned to the Lancaster Avenue Station of the Wilmington Post Office. (See D.I. 32, at 2.)[1] He filed the present actions after the USPS removed him from his position, due to his history of on-the-job disciplinary problems, which the court details below.

On July 7, 2003, Reinbold received a fourteen-day suspension for failure to follow instructions, when he refused to provide evidence of an alleged court appearance, which kept him out of work on June 27, 2003. (Id. Ex. 1 at RIN00003.) The suspension notice also warned that "future deficiencies will result in more severe disciplinary action." (Id. at RIN00004.) According to the suspension notice, Reinbold had failed to follow instructions and Standard Operating Procedures ("SOP") in the past, on January 4, 2003, and April 4, 2003, and was receiving the suspension because prior letters of warning had not impressed upon him the seriousness of his actions. (Id. at RIN00003-4.) In response to the suspension, Reinbold initiated the formal grievance process. The NALC defendants represented Reinbold during the first step of the process, on November 20, 2003, and were able to get his infraction reduced from a fourteen day suspension to a letter of warning. (Id. at RIN00001.)

On August 11, 2003, USPS sent Reinbold a notice of fourteen-day suspension, stating that he discarded deliverable mail and failed to follow instructions. (Id. at RIN00011.) The notice also outlined Reinbold's past violations and warned that "future deficiencies will result in more severe

---

[1] For convenience, the court will refer to docket item numbers from the 05-47(GMS) case.

disciplinary action . . . includ[ing] reduction in grade and/or pay, or removal from the Postal Service." (Id. at RIN00012.) Again, Reinbold invoked the grievance process. The NALC defendants represented him, and the representation resulted in a reduction of his suspension to seven days. (Id. at RIN00010.)

On November 6, 2003, Reinbold received his third notice of fourteen-day suspension for failure to follow instructions. (Id. at RIN00119.) Specifically, Reinbold called in sick and was instructed to provide medical documentation to substantiate his absence. (Id.) Reinbold returned to work without the medical documentation and was disciplined by his supervisor. (Id.) There is no indication that Reinbold filed a grievance with respect to this action.

On July 21, 2004, the USPS sent Reinbold a notice of removal for failure to follow instructions. (Id. at RIN00129.) The letter stated that Reinbold was being removed from his position because he ignored his supervisor's order to deliver mail, and simply "clocked out" for the day. (Id.) The USPS determined that removal was the appropriate course of action, given Reinbold's prior disciplinary history. (Id. at RIN00130.) Reinbold disagreed with the USPS and invoked the grievance process. The NALC defendants represented Reinbold in the first step of the process, as well as a subsequent appeal. During the appeal process, the NALC defendants made several arguments on Reinbold's behalf including: (a) the SOP that the USPS contended Reinbold violated was revised shortly before the incident, and letter carriers were not given the time to read it; (b) the SOP that the USPS usually practices was not followed on the day of the incident; (c) Reinbold's supervisor yelled his instructions across the parking lot at a distance of over 30 feet, and received no response from Reinbold; (d) Reinbold's supervisor, upon receiving no response, should have spoken to him face to face; (e) the discipline is punitive rather than progressive, because

Reinbold had performed his duties for over six months without incident; and (f) the severity of the discipline is not reasonable because the supervisor is also culpable by his actions – he should have made sure that Reinbold understood his instructions. (RIN00125-26.) The NALC defendants' representation resulted in Reinbold's removal being reduced to a thirty day suspension, with accompanying loss of pay. (Id. at RIN00124.)

Finally, on October 27, 2004, Reinbold received his second, and final, notice of removal for failure to follow instructions. (Id. at RIN00146.) According to the notice, the USPS decided to remove Reinbold because he worked more overtime than he was authorized to work. (Id.) Reinbold also violated an SOP, which does not allow employees to sort mishandled or marked-up mail on overtime unless authorized. (Id.) Unhappy with the removal notice, Reinbold filed a grievance and was represented by the NALC defendants. The NALC defendants made arguments on Reinbold's behalf, requested the production of documents by the USPS management, and submitted multiple statements and documents, including a statement from Reinbold, to support his position throughout the grievance process. (Id. at RIN00153, 158, 162-67, 169-71, 187.)

At the conclusion of the first step of the grievance process, Reinbold appealed his removal to a Dispute Resolution Team (the "Team"). Again, the NALC defendants represented Reinbold and made arguments on his behalf. (See Id. at RIN00143.) The NALC defendants specifically argued that Reinbold's supervisors were singling him out because of the notice of removal and other disciplinary actions previously taken against him. (Id. at RIN00144.) After considering all the information with which they were provided, the Team resolved the issue, concluding that the USPS had just cause to remove Reinbold. (Id. at RIN00143.) To support their conclusion, the Team noted that Reinbold had been "given numerous chances and opportunities to improve his work ethic and

performance as indicated by his previous discipline record." (Id. at RIN00144.) The Team also noted that "[i]t is apparent that . . . Reinbold has no intention of improving his work performance or following the instructions of his Supervisor(s). The [r]emoval action is progressive and for just cause." (Id. at RIN00145.) As a result, the USPS removed Reinbold from his position, effective December 16, 2004. (Id. at RIN00142.)

### III.  DISCUSSION

In the present cases, Reinbold's complaints allege that the NALC defendants breached their duty of fair representation, and that the USPS breached the CBA. Federal labor law policy generally requires employees to exhaust any grievance procedure provided in the union's CBA before they can assert a breach of contract claim against their employer in federal court. *Sebrowski v. Pittsburgh Press Co.*, 188 F.3d 163, 168 (3d Cir. 1999). Usually, an employee is bound by the resolution reached under the CBA's grievance procedure. *Griesmann v. Chemical Leaman Tank Lines, Inc.*, 776 F.2d 66, 72-73 (3d Cir. 1985). However, an employee may bring a suit in federal court when he challenges the validity of the grievance procedure and alleges that his employer breached the CBA. *Id.* In order to prevail in this type of "hybrid suit," it is incumbent upon the employee to prove that the union breached its duty of fair representation and that his employer breached the CBA. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, at 163-64 (1983). Thus, Reinbold can only prevail in his breach of contract claim against the USPS if he can demonstrate that the NALC defendants breached their duty of fair representation. Accordingly, the court must determine whether the NALC defendants breached their duty of fair representation.

A union breaches its duty of fair representation, "only when [its] conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S.

5

171, 190 (1967) (citation omitted). Additionally, a union has "broad discretion in its decision whether and how to pursue an employee's grievance against an employer." *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 567-68 (1990). Thus, an employee is subject to the union's discretionary power to settle, or even to abandon a grievance, so long as it does not act arbitrarily. *Bazarte v. United Transportation Union*, 429 F.2d 868, 872 (3d Cir. 1970). A union's actions are arbitrary "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' to be irrational." *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)). Further, proof of mere negligence or poor judgment on the part of the union is not enough to support a claim of unfair representation. *Findley v. Jones Motor Freight, Division Allegheny Corp.*, 639 F.2d 953, 960-61 (3d Cir. 1981). Finally, "bare assertions" of arbitrary or bad faith conduct by the union cannot survive a motion for summary judgment. *Weber v. Potter*, 338 F. Supp. 2d 600, 607 (E.D. Pa. 2004) (citing *Masy v. New Jersey Transit Rail Operations, Inc.*, 790 F.2d 322, 328 (3d Cir. 1986)).

Here, the USPS contends that Reinbold has failed to demonstrate that the NALC defendants breached their duty of fair representation, and that it is entitled to judgment as a matter of law. The court agrees. Reinbold's complaints allege that the NALC defendants and the USPS "engaged in unfair labor practices[,] . . . failed to represent [him] per the CBA[,]" and "did not act in good faith in representing him." (D.I. 1 ¶ 4; 04-342 D.I. 1 at Ex. 2.) However, Reinbold has failed to present any evidence whatsoever in support of his allegations.[2] That is, Reinbold makes only "bare

---

[2] Indeed, as previously stated, Reinbold has not even filed a response to the USPS' motion.

assertions" in his complaints regarding the NALC defendants' bad faith and the USPS' unfair labor practices. As previously discussed, however, these assertions cannot withstand a motion for summary judgment.

Moreover, as previously outlined in Section II, the USPS has provided the court with documentation regarding disciplinary actions against Reinbold for his failure to follow instructions on five different occasions. The court has reviewed the documents and concludes that the NALC defendants did not abdicate their duty of representation. Rather, it seems as though they vigorously represented Reinbold with respect to those USPS decisions for which he decided to file a grievance, often through both the first step of the process and an appeal. Based on the evidence before it, the court concludes that the NALC defendants' actions were not arbitrary, discriminatory, or in bad faith. Therefore, because Reinbold has failed to meet this threshold showing, his claims against the USPS must fail as a matter of law.

### IV.  CONCLUSION

For all of the aforementioned reasons, IT IS HEREBY ORDERED that:

1. The USPS' Motion for Summary Judgment (D.I. 31) is GRANTED.
2. Judgment is hereby entered in favor of the USPS.
3. The USPS' Motion to Dismiss or in the Alternative to Compel Rule 26(a) Disclosures by the Plaintiff (D.I. 24) is DENIED as moot.

Dated: April 10, 2006                                         /s/ Gregory M. Sleet
                                                              UNITED STATES DISTRICT JUDGE